**No. 24-4751**

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ECHOSPAN, INC.
*Plaintiff–Appellant,*
v.
MEDALLIA, INC.
*Defendant–Appellee.*

On appeal from United States District Court, Northern District of California,
No. 5:22-cv-01732-NC, Hon. Nathaniel M. Cousins

## APPELLANT'S REPLY BRIEF

## [REDACTED]

**COUNCILL, GUNNEMANN & CHALLY LLC**
Jonathan R. Chally
*jchally@cgc-law.com*
Jennifer R. Virostko
*jvirostko@cgc-law.com*
75 14th Street NE, Suite 2475
Atlanta, Georgia 30309
(404) 407-5250

**LEWIS & LLEWELLYN LLP**
*Evangeline A.Z. Burbidge
*eburbidge@lewisllewellyn.com*
Zachary C. Flood
*zflood@lewisllewellyn.com*
601 Montgomery Street, Suite 2000
San Francisco, California 94111
(415) 800-0590

**GREINES, MARTIN, STEIN & RICHLAND LLP**
*Jeffrey Gurrola
*jgurrola@gmsr.com*
Alex Chemerinsky
*achemerinsky@gmsr.com*
6420 Wilshire Boulevard, Suite 1100
Los Angeles, California 90048
(310) 859-7811

*Attorneys for Plaintiff–Appellant* ECHOSPAN, INC.

**TABLE OF CONTENTS**

PAGE

ARGUMENT      1

I.      Medallia Cannot Salvage The Judgment As A Matter Of Law Because The District Court Misapplied The Law On Damages.      1

     A.      The district court erred as a matter of law by accepting Medallia's speculation that the jury failed to apportion damages.      1

     B.      The evidentiary record provided the jury an adequate basis on which to apportion damages.      4

         1.      EchoSpan's evidence more than satisfied the reasonable-basis damages standard.      4

         2.      Medallia's and the district court's reliance on *O2 Micro* is misplaced.      8

             a.      If *O2 Micro* can be read as Medallia advocates, it is inconsistent with controlling authority.      8

             b.      *O2 Micro* is readily distinguishable.      10

             c.      Subsequent decisions in the same district have declined to require pre-apportionment.      12

         3.      Medallia's other cases are likewise distinguishable.      14

     C.      Medallia's "waiver" argument is meritless.      15

i

# TABLE OF CONTENTS

**PAGE**

II.     Medallia Cannot Salvage The Judgment As A Matter Of Law For The Independent Reason That EchoSpan Bore No Burden To Apportion Damages Among Its Trade Secrets.    16

III.     Medallia Cannot Salvage The Judgment As A Matter Of Law By Arguing That The District Court Should Have Reversed The Jury's Liability Findings.    19

     A.     Substantial evidence supports the jury's finding that EchoSpan adequately identified TS6.    19

     B.     Substantial evidence supports the jury's finding that TS6 is a secret and that EchoSpan takes reasonable measures to maintain that secrecy.    21

IV.    The District Court Erred By Not Granting A New Trial After Unfair Surprise Eliminated The Entire Jury Verdict.    25

CONCLUSION    29

CERTIFICATE OF COMPLIANCE FOR BRIEFS    30

CERTIFICATE OF SERVICE    31

ii

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Allstate Ins. Co. v. Fougere*
79 F.4th 172 (1st Cir. 2023)................................................................. 22

*ATS Products Inc. v. Ghiorso*
2012 WL 253315 (N.D. Cal. Jan. 26, 2012).................................... 12

*Beasley v. Wachovia Bank*
627 S.E.2d 417 (Ga. Ct. App. 2006)........................................... 4, 5, 9

*BladeRoom Group, Ltd. v. Facebook, Inc.*,
2018 WL 1611835 (N.D. Cal. Apr. 3, 2018)................................... 12

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*
331 F.Supp.3d 977 (N.D. Cal. 2018)................................... 12, 13, 16

*Campbell v. City of Los Angeles*
903 F.3d 1090 (9th Cir. 2018) ......................................................... 6

*Caro v. Calderon*
165 F.3d 1223 (9th Cir. 1999) ....................................................... 10

*Cartel Asset Mgmt. v. Ocwen Fin. Corp.*
249 F.App'x 63 (10th Cir. 2007) .................................................... 18

*Carter Prods., Inc. v. Colgate-Palmolive Co.*
214 F.Supp. 383 (D. Md. 1963)...................................................... 17

*Data General Corp. v. Grumman Systems Support Corp.*
36 F.3d 1147 (1st Cir. 1994)........................................................... 17

*Diamond Power International, Inc. v. Davidson*
540 F.Supp.2d 1322 (N.D. Ga. 2007)............................................. 24

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*
890 F.2d 165 (9th Cir. 1989) ......................................................... 28

## TABLE OF AUTHORITIES

**PAGE(S)**

*El-Hakem v. BJY, Inc.*
415 F.3d 1068 (9th Cir. 2005) ...................................................... 1, 23

*Hart v. Massanari*
266 F.3d 1155 (9th Cir. 2001) ......................................................... 25

*Henry Hope X-Ray Prods., Inc. v. Marron Carrel, Inc.*
674 F.2d 1336 (9th Cir. 1982) ......................................................... 24

*IMAX Corp. v. Cinema Techs., Inc.*
152 F.3d 1161 (9th Cir. 1998) ......................................................... 19

*In re Urethane Antitrust Litig.*
768 F.3d 1245 (10th Cir. 2014) ......................................................... 9

*John Thurmond & Assocs., Inc. v. Kennedy*
668 S.E.2d 666 (Ga. 2008) ............................................................... 10

*Kaffaga v. Estate of Steinbeck*
938 F.3d 1006 (9th Cir. 2019) ........................................................... 3

*Life Spine, Inc. v. Aegis Spine, Inc.*
8 F.4th 531 (7th Cir. 2021) ......................................................... 21, 22

*Liu v. Sec. & Exch. Comm'n*
591 U.S. 71 (2020) ............................................................................ 3

*Management & Engineering Technologies International, Inc. v.*
*Information Systems Support, Inc.*
490 F.App'x 30 (9th Cir. 2012) ....................................................... 14

*Management & Engineering Technologies International, Inc. v.*
*Information Systems Support, Inc.*
639 F.App'x 506 (9th Cir. 2016) ..................................................... 27

*McCord v. Maguire*
873 F.2d 1271 (9th Cir. 1989) ........................................................... 2

iv

# TABLE OF AUTHORITIES

**PAGE(S)**

*Mercado v. Ahmed*
  974 F.2d 863 (7th Cir. 1992) ........................................................... 9

*Metallurgical Indus., Inc. v. Fourtek, Inc.*
  790 F.2d 1195 (5th Cir. 1986) ...................................................... 22

*Motorola Solutions, Inc. v. Hytera Communications Corporation Ltd.*
  108 F.4th 458 (7th Cir. 2024) ....................................................... 17

*Nintendo of America, Inc. v. Dragon Pacific International*
  40 F.3d 1007 (9th Cir. 1994) ........................................................ 16

*O2 Micro International, Ltd. v. Monolithic Power Systems, Inc.*
  399 F.Supp.2d 1064 (N.D. Cal. 2005) ....................................... 8, 9, 10, 11, 13

*OTR Wheel Eng'g, Inc. v. West Worldwide Servs., Inc.*
  897 F.3d 1008 (9th Cir. 2018) ................................................... 1, 19

*Pottinger v. Cross*
  317 S.E.2d 850 (Ga. Ct. App. 1984) .............................................. 4

*Reeves v. Sanderson Plumbing Prods., Inc.*
  530 U.S. 133 (2000) ..................................................................... 22

*Services Employees International Union v. National Union*
  *of Healthcare Workers*
  718 F.3d 1036 (9th Cir. 2013) ....................................................... 1

*Skye Orthobiologics, LLC v. CTM Biomedical, LLC*
  2023 WL 5667558 (C.D. Cal. Aug. 9, 2023) ............................... 10

*Texas Advanced Optoelectronics Solutions, Inc. v.*
  *Renesas Electronics America, Inc.*
  895 F.3d 1304 (Fed. Cir. 2018) ............................................ 14, 27, 28

*Trotman v. Velociteach Project Management, LLC*
  715 S.E.2d 449 (Ga. Ct. App. 2011) .......................................... 5, 16

# TABLE OF AUTHORITIES

**PAGE(S)**

*Turner Broad. Sys., Inc. v. McDavid*
   693 S.E.2d 873 (Ga. Ct. App. 2010) ................................................................. 4

*United States v. Wood*
   943 F.2d 1048 (9th Cir. 1991) ...................................................................... 21

*USM Corp. v. Marson Fastener Corp.*
   392 Mass. 334 (1984) ................................................................................. 18

*White v. Arthur Enters., Inc.*
   464 S.E.2d 225 (Ga. Ct. App. 1995) .................................................... 5, 9, 16

*Wynn Oil Co. v. Am. Way Serv. Corp.*
   943 F.2d 595 (6th Cir. 1991) ....................................................................... 18

*Young v. Ga. Agr. Exp. Auth.*
   733 S.E.2d 529 (Ga. Ct. App. 2012) .............................................................. 4

## Statutes

Ga. Code Ann. § 10-1-763 ...................................................................... 2, 28

Ga. Code Ann. § 10-1-763(a) ...................................................................... 27

## Other Authorities

David S. Almeling et al., *Disputed Issues in Awarding Unjust
   Enrichment Damages in Trade Secret Cases*
   19 Sedona Conf. J. 667 (2018) ................................................................... 10

Melvin R. Jager & Brad Lane
   *2 Trade Secrets Law* § 7:20 (Aug. 2024 update) ............................................. 10

Restatement (Third) of Unfair Competition § 45, cmt. (f) (1995) ..................... 18

## ARGUMENT

### I. Medallia Cannot Salvage The Judgment As A Matter Of Law Because The District Court Misapplied The Law On Damages.

#### A. The district court erred as a matter of law by accepting Medallia's speculation that the jury failed to apportion damages.

De novo review of an order granting judgment as a matter of law ("JMOL") requires deference to the jury's findings. OB 22.

Medallia argues that this Court should instead defer to the JMOL ruling. AB 27. It cites, without quotation or explanation, to *Services Employees International Union v. National Union of Healthcare Workers*, 718 F.3d 1036 (9th Cir. 2013), but that case does not help Medallia. It involved a different issue (district court's discretionary decision to alter a judgment to reconcile inconsistent verdict answers) and a different standard of review (abuse of discretion). *Id.* at 1051. Here, however, deference goes to the jury and its verdict—not to the district court's order *overriding* the jury's verdict. *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1019 (9th Cir. 2018) (if there is a reasonable interpretation of the evidence that supports the verdict, the court must accept it). JMOL is proper "only if no reasonable juror could find in the non-moving party's favor." *El-Hakem v. BJY, Inc.*, 415 F.3d 1068, 1072 (9th Cir. 2005); *see* OB 22.

The district court thus had a non-discretionary duty to draw all reasonable inferences in favor of upholding the jury verdict. *OTR Wheel Eng'g*, 897 F.3d at 1019. It erred by doing the opposite.

1

The parties have different accounts of how the jury arrived at its $11.7 million damages figure. But the only relevant question is whether the record permits the inference that the jury apportioned—that is, that the jury worked down from Medallia's total unjust enrichment to award damages attributable solely to trade secret ("TS") 6. The record supports that inference: The jury awarded half of the $23.4 million in total unjust enrichment shown. OB 26–27.

Medallia advances an alternative explanation—deviating from the jury's verdict by roughly $100,000—that the jury intended to award the *full amount* of two out of three unjust enrichment sub-categories. AB 27, 31 (arguing the jury awarded all head start and saved costs, but no ill-gotten gains). But the jury was instructed that it could combine unjust enrichment categories. 3-ER-345. Medallia, which did not ask for a verdict form specifying sub-categories of unjust enrichment, cannot now speculate about the jury's intention. *See McCord v. Maguire*, 873 F.2d 1271, 1274 (9th Cir. 1989) (failure to ask for "separate factual determinations" on verdict form required upholding verdict if supported by any view of the evidence: "We will not allow litigants to play procedural brinkmanship with the jury system and take advantage of uncertainties they could well have avoided"), *amended by* 885 F.2d 650 (9th Cir. 1989).

Medallia now argues that the jury must have found Medallia had no ill-gotten gains because it found that *EchoSpan* had not been harmed. AB 27. But EchoSpan's loss and Medallia's unjust enrichment are distinct, non-overlapping damages categories. *See* Ga. Code Ann. § 10-1-763; OB 26. Ill-gotten gains

2

measures the tortfeasor's profits as a component of unjust enrichment. *Liu v. Sec. & Exch. Comm'n*, 591 U.S. 71, 79–80 (2020). The jury could and did require Medallia to disgorge ill-gotten profits from stealing EchoSpan's trade secret without needing to find that EchoSpan suffered pecuniary loss. *Id.*

Medallia also argues, as it did at trial, that there were no ill-gotten gains because Medallia secured the Bank of America contract before it stole TS6. AB 27. The jury rejected that argument: The evidence showed that Medallia was far behind on the Bank of America project and could not have completed it without stealing EchoSpan's trade secret. *See* 5-ER-727 ("too aggressive a time line"); 7-ER-1072–76 (Medallia was "a million miles away" from completion); 5-ER-693–95, 711, 718–26, 730 (Medallia lied to access EchoSpan's system; took "helpful" screenshots; and copied the software). The jury found that Medallia's willful, malicious misappropriation led to its profits. (2-ER-323, 326.) Stealing EchoSpan's product did not help Medallia *win* the contract, but it did enable Medallia to *fulfill* it.

But even if Medallia's explanation is plausible, that means only that the district court faced two reasonably possible explanations for the jury's $11.7 million award. It had no discretion to accept the version that required throwing out the jury's verdict. By doing so, it erred as a matter of law. *See, e.g.*, *Kaffaga v. Estate of Steinbeck*, 938 F.3d 1006, 1013 (9th Cir. 2019) (Courts "must avoid reversing a jury verdict for lack of evidence or alleged double recovery if the

3

verdict is capable of a 'correct interpretation' that is not illegal, and if the verdict is not 'hopelessly ambiguous.'").

### B. The evidentiary record provided the jury an adequate basis on which to apportion damages.

#### 1. EchoSpan's evidence more than satisfied the reasonable-basis damages standard.

**The law.** Contrary to Medallia's argument at 33, Georgia courts recognize a flexible approach to calculating damages. *See, e.g.*, *Turner Broad. Sys., Inc. v. McDavid*, 693 S.E.2d 873, 887–88 (Ga. Ct. App. 2010). Recovery is not precluded by uncertainty as to the *amount* of damages. *Young v. Ga. Agric. Exposition Auth.*, 733 S.E.2d 529, 532–33 (Ga. Ct. App. 2012) ("[T]he rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages."). The jury has reasonable latitude to "estimate" damages. *Pottinger v. Cross*, 317 S.E.2d 850, 852 (Ga. Ct. App. 1984). A "verdict will not be set aside as unsupported by the evidence when the amount of it is within the range covered by the testimony." *Turner Broad. Sys.*, 693 S.E.2d at 886 (citation omitted).

As the opening brief explained, cases like *Beasley v. Wachovia Bank* recognize that, in Georgia, a jury's calculation of damages need not be formulaic. 627 S.E.2d 417, 420 (Ga. Ct. App. 2006). Georgia courts "have often upheld jury verdicts that awarded less than the amount proven at trial, holding only that the amount must be within the range of damages shown, not that the amount may only be a lesser amount if calculated according to some proven formula." *Id.*

4

Medallia seeks to distinguish *Beasley* on the ground that *Beasley* "had nothing to do with trade secrets." AB 40. This fails because, as Medallia recognizes elsewhere, *e.g.*, AB 39, there is no special rule for particularity of damages in trade secret cases. The rule is simply that, regardless of context, damages need a reasonable basis. Under the ordinary rules recognized in *Beasley*, the jury had broad discretion to choose any amount of damages within the range suggested by the evidence. *See also White v. Arthur Enters., Inc.*, 464 S.E.2d 225, 226 (Ga. Ct. App. 1995) (holding in a trade secret case that "[b]ecause the jury's award of damages was well within the range of the evidence, it shall be affirmed").

What's more, the opening brief cited *trade secret* authorities also applying the flexible rule recognized in *Beasley*. *Trotman v. Velociteach Project Management, LLC*, 715 S.E.2d 449 (Ga. Ct. App. 2011) and *White*, 464 S.E.2d 225 upheld trade-secret verdicts against reasonable-basis challenges because the jury awarded damages within the total amount shown at trial: in *Trotman*, $134,000 of $300,000 sought and, in *White*, $18,000 of $90,000. *Trotman* at 453, 455–56; *White* at 225–26. OB 32–33. Medallia ignores these controlling authorities.

**The evidence.** EchoSpan's evidence more than satisfied Georgia's lenient standard. *See* OB 30–33, 60.

Medallia's expert agreed that the indispensability of a feature is "relevant to both a determination of value and separability" of trade secrets. 9-ER-1782. The district court dismissed this testimony because indispensability, standing alone, does not "dictate value." 1-ER-26. Medallia echoes this, arguing that

5

the jury's award fails because no single witness told the jury precisely what to award for TS6.  AB 28.

But the question is not whether any single piece of evidence *dictated* TS6's value; the question is whether the record as a whole contains substantial evidence *relevant* to determining value.  *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1118 (9th Cir. 2018); § I.A, *supra*.

It does.  EchoSpan asked the jury to award "between $17.1 and $23.37 million."  8-ER-1509.  To allow the jury to calculate the appropriate amount of damages from that range, EchoSpan presented evidence on each trade secret's relative role in and value to the system.  It offered testimony regarding each trade secret and exhibited the trade secrets for the jury, showing the way they all connected back to TS6.  7-ER-1180–90 (testimony about what each trade secret did); 9-ER-1795–1801 (testimony about the importance of TS6, that TS6 "enables everything" because "[a]ll of the other trade secrets are attached to it"; and that EchoSpan could not sell any other trade secret without TS6); 10-ER-1634–35 ("admin tool is what makes everything work"; "allows clients to do everything"; "gives them all of the options that they want so they can produce whatever it is they need"); 10-ER-1799–1800 ("the core of the administrative system"; advanced settings allow clients "to program the functionality through the application" and are "what the other trade secrets look back to to determine how to communicate with one another and to drive their own functions"); 11-ER-1973–87 (demonstrating the software in-depth).

6

Contrary to Medallia's suggestion at 28, TS6's value was its functionality, *i.e.*, the way that it enabled all the 360-review features to work together in a unified system. *See* 7-ER-1190–91; 10-ER-1634–35, 1799–1800; 11-ER-1975, 1986–87 (demonstrating system).

Medallia *copied* that system, of which TS6 was an integral part. *See* p. 3, *supra*. Medallia then developed—and profited from—a competing system incorporating that valuable stolen trade secret. *Id.* EchoSpan also presented evidence of Medallia's head start, saved costs, and disgorgement, *see* 8-ER-1463–70, and that TS6 was the heart of the system that drives its worth, because "without number 6, the other features do have value, but they can't do anything," *see* 9-ER-1802. The jury knew what TS6 did, its importance to the overall system, and the value Medallia achieved by stealing that system. From this evidence, the jury reasonably determined that TS6 accounted for about half the system's value. Because the evidence showed that Medallia replicated and profited from that stolen system, the jury had a reasonable basis to attribute half of Medallia's ill-gotten gains to that theft.

Medallia repetitively quotes, out of context, EchoSpan's expert's answer when asked whether the jury "would have no way of figuring out from your calculation what the damages would be for a misappropriation of" one trade secret. AB 1, 2, 12, 13–14, 26, 30; 8-ER-1498. The expert was testifying that his damages model did not pre-apportion damages, which no one disputes. *See* 8-ER-1497–50. That does not preclude the existence of *other* evidence from which the jury could

7

apportion damages. The expert testified that the focus is on "value drivers," 8-ER-1499, and Medallia's expert agreed that a trade secret's role in a system is relevant to determining its value, 9-ER-1782. EchoSpan's other testimony and evidence gave the jury a reasonable basis to determine value by evaluating whether and to what extent TS6 drove Medallia's unjust enrichment.

The only question is whether—from *all the evidence* presented at trial—the jury could have reasonably determined that willfully and maliciously stealing TS6 accounted for about half of Medallia's unjust enrichment. As shown, under the controlling law, the answer is yes.

> ### 2. Medallia's and the district court's reliance on *O2 Micro* is misplaced.
>
> #### a. If *O2 Micro* can be read as Medallia advocates, it is inconsistent with controlling authority.

According to Medallia, the ruling in *O2 Micro International, Ltd. v. Monolithic Power Systems, Inc.*, 399 F.Supp.2d 1064 (N.D. Cal. 2005) merely "reaffirmed the settled and straightforward damages principle that a jury must have 'a reasonable basis for' its award." AB 39 (citation omitted). No one disputes that the reasonable basis standard applies.

The problem is that, under the district court's and Medallia's interpretation, *O2 Micro* says something much broader: that without expert apportionment testimony the jury's damages award *cannot* have a reasonable basis. *See* 1-ER-22–29. To the extent that *O2 Micro* can be read that way, it is contrary to law.

8

**Georgia law.** *O2 Micro* cited no authority for its conclusion that a jury's damages apportionment lacks a reasonable basis unless supported by expert testimony. *See* 399 F.Supp.2d at 1076–77. That conclusion is inconsistent with Georgia law, which controls here and takes a flexible approach to damages, trade secret or otherwise. *See* § I.B.1, *supra*. Where an award is "within the range of the evidence, it shall be affirmed." *White*, 464 S.E.2d at 226. The jury does not need a "formula" to award a lesser amount. *Beasley*, 627 S.E.2d at 420. Medallia provides no basis in Georgia law to justify relying on a rigid interpretation of *O2 Micro* instead of Georgia's flexible standard.

**Federal law.** The district court's *O2 Micro* interpretation would mean that no jury could apportion damages among trade secrets unless an expert gives them a specific dollar figure for each secret. This is inconsistent with the liberal standard governing review of a jury's damages award: Courts "'review damages evidence in the light most favorable to the verdict,' and will 'let the verdict stand unless there [is] no rational connection between the evidence on damages and the verdict.'" *Mercado v. Ahmed*, 974 F.2d 863, 866 (7th Cir. 1992) (citations omitted) (alteration in original). Thus, "a jury can reduce an expert's calculations on damages even when unable to 'run the exact numbers and calculations of [a damages] model with "mathematical certainty."'" *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1268 (10th Cir. 2014) (collecting cases).

**California law.**  Even California law, which *O2 Micro* purports to apply, is to the contrary:  "California does not require an apportionment of damages to individual trade secrets."  *Skye Orthobiologics, LLC v. CTM Biomedical, LLC*, 2023 WL 5667558, at *10 (C.D. Cal. Aug. 9, 2023); *see* OB 40–41.  One of Medallia's authorities discussing *O2 Micro* recognizes that apportionment is not uniformly required.  Melvin R. Jager & Brad Lane, *2 Trade Secrets Law* § 7:20 (Aug. 2024).[1]

### b.      *O2 Micro* is readily distinguishable.

*O2 Micro*, a trial court decision, is best understood based on its unique facts.

The trade secrets at issue here were far simpler than those in *O2 Micro*. Medallia argues that "trade-secret law does not vary based on the subject matter's purported complexity."  AB 38.  But the question here is not specific to trade secrets.  Instead, it is whether damages have a reasonable basis—and complexity *is* relevant to this question.  *See John Thurmond & Assocs., Inc. v. Kennedy*, 668 S.E.2d 666, 669 (Ga. 2008) ("the measure of damages must vary with the facts of each case").  Furthermore, as a matter of federal evidentiary law—again, not specific to trade secrets—expert testimony is necessary only "when lay people are unable to make a reasoned judgment alone."  *Caro v. Calderon*, 165 F.3d 1223,

---

[1] Medallia's two secondary sources merely describe *O2 Micro* alongside factually distinguishable decisions.  AB 21 (citing Jager & Lane, *2 Trade Secrets Law* § 7:20; David S. Almeling et al., *Disputed Issues in Awarding Unjust Enrichment Damages in Trade Secret Cases,* 19 Sedona Conf. J. 667, 689, 694 (2018)).

1227 (9th Cir. 1999). The necessity of expert testimony thus directly depends upon the complexity of the issues.

Here, the jury could work down from the overall damages total EchoSpan presented to arrive at a reasonable damages determination because the trade secrets were readily comprehensible. OB 29–31. Conversely, a lay jury would be lost trying to guess at the relative value of a particular transformer design (which the *O2 Micro* jury found was misappropriated) against the value of a particular method of multiplexing functions to enhance output of inverter controller pins (which was not misappropriated). *See* 399 F.Supp.2d at 1072, 1075.

The trade secrets here were also interdependent parts of a unified system— with TS6 as the value-driver enabling "███████████████████ ████████████████"—while the ones in *O2 Micro* were not. 11-ER-1987; OB 42–44. Contrary to Medallia's assertion, the trade secrets in *O2 Micro* couldn't have been interconnected; unlike here, they weren't even all part of the product at issue. *See* 399 F.Supp.2d at 1075 (in addition to transformer technology, *O2 Micro* concerned cost-related information in spreadsheets). While the party in *O2 Micro* may have argued that one trade secret was the "heart" of the system, that didn't aid the jury in determining its value relative to other trade secrets that weren't part of the system at all.

11

### c.     Subsequent decisions in the same district have declined to require pre-apportionment.

Medallia glides past *ATS Products Inc. v. Ghiorso*, in which the Northern

District of California upheld a $175,000 damages verdict for misappropriation of

some (but not all) of a bundle of trade secrets worth $500,000.  2012 WL 253315,

at *1 (N.D. Cal. Jan. 26, 2012); OB 38; *see* AB 34.  The court correctly recognized

that the award had to be upheld because the "general rule that prohibits evidence of

speculative profits does not apply to uncertainty as to the *amount* of the profits

which would have been derived," but rather to uncertainty regarding their

*occurrence*.  2012 WL 253315, at *1.

The Northern District again followed this approach in *BladeRoom Group,*

*Ltd. v. Facebook, Inc.*, 2018 WL 1611835 (N.D. Cal. Apr. 3, 2018) (*BladeRoom I*)

and *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 331 F.Supp.3d 977 (N.D. Cal.

2018) (*BladeRoom II*), *rev'd on other grounds*, 20 F.4th 1231 (9th Cir. 2021).[2]

There, the district court concluded that the plaintiff's expert was not required to

assign damages among trade secrets.  *BladeRoom I*, 2018 WL 1611835 at *6.

At trial, the jury found that the defendant misappropriated some but not all trade

secrets and awarded $30 million—without apportioning.  *BladeRoom II*, 331

F.Supp.3d at 979, 989.  The defendant sought JMOL based on lack of

apportionment.  *Id.*  The court denied that motion, recognizing that the jury wasn't

---

[2] Medallia incorrectly states that *BladeRoom I* and *BladeRoom II* are different
cases.  AB 35.  They are different orders in the same case, Northern District of
California Case No. 5:15-cv-01370-EJD.

12

required to apportion for three reasons. First, contrary to *O2 Micro*, "California authority does not require an apportionment of damages." *Id.* at 989. Second, under the Restatement, the defendant bore the burden to apportion its ill-gotten gains. *Id.* at 988; *see* § II, *infra*. Third, the plaintiff "could argue that since its trade secrets encompass the designs and methods used to create parts of a unified structure," so "the misappropriation of any of the asserted trade secrets would have caused all of the damages it sought." *Id.* at 989.

Medallia argues that *BladeRoom II* "carries little interpretative weight" because the plaintiff in that case "asserted a 'unified structure' theory" and, according to Medallia, EchoSpan did not. AB 35. But that was exactly EchoSpan's theory here. *See, e.g.*, 9-ER-1798, 1802 (none of the trade secrets can be sold or used separately); 9-ER-1828 (EchoSpan's damages expert testified that a conjoint analysis pre-apportioning damages is "probably not appropriate for this type of bundle of software"); OB 43. Here, as in *BladeRoom II*, the fact that some components of the system were ultimately found not to be secrets does not mean they were not part of a *unified system*. *See* OB 32, 43.

Medallia notes that *BladeRoom II* was vacated on appeal and quotes a parenthetical from a concurrence describing the outcome of *O2 Micro*. AB 35–36 (quoting 20 F.4th 1231, 1250 (9th Cir. 2021) (Rawlinson, J., concurring)). First, this Court's decision to vacate was based on English contract law. 20 F.4th at 1236. It had nothing to do with apportionment or damages. *Id.* And the concurrence merely opined that, on retrial, it would be "not sufficient" for

13

plaintiff's expert to attribute the full value of defendant's business to the misappropriated trade secret despite admitting the business had some independent value. 20 F.4th at 1250 (Rawlinson, J., concurring). Here, the jury *did* account for the value not attributable to TS6, reducing the unjust enrichment damages by half. The concurrence has no application.

### 3. Medallia's other cases are likewise distinguishable.

*Management & Engineering Technologies International, Inc. v. Information Systems Support, Inc.*, 490 F.App'x 30 (9th Cir. 2012) (*METI*) does not dictate a contrary result. There, the jury awarded the *full* "reasonable royalty" damages amount the plaintiff sought for all of its trade secrets, even though it found two to be non-secret, so the Court vacated the award. *Id.* at 33–34; *see* Motion for Judicial Notice 8, 24. *METI* does not announce an expert apportionment requirement; at most, it found that the jury could not award full reasonable royalty damages for a subset of trade secrets. Here, the jury here apportioned, and it had sufficient data to do so. *See* OB 29–33; § I.B.1, *supra*.

*Texas Advanced Optoelectronics Solutions, Inc. v. Renesas Electronics America, Inc.*, 895 F.3d 1304 (Fed. Cir. 2018) is similarly off-point. There, the Federal Circuit, applying Texas law, vacated a damages award after the court reversed the finding of liability on two of three grounds. *Id.* at 1312, 1317. The jury's award was based on all three secrets, which collectively were "the drivers of sales," so it wasn't clear that the surviving trade secret could support the entire award. *Id.* at 1317. This case is different. The evidence showed

14

that TS6, specifically, drove value.  And the jury only awarded damages on TS6.  *See* § I.A, *supra*.

### C. Medallia's "waiver" argument is meritless.

Medallia claims that EchoSpan waived the right to have the jury apportion damages—and, implicitly, to defend that apportionment on appeal—by failing to raise it below.  AB 29–30.  That argument is factually and legally baseless:

- EchoSpan argued apportionment.  Counsel told the jury that "[a]ny amount you award in this case can be appropriately *apportioned* to trade secret number 6."  9-ER-1876 (emphasis added).  EchoSpan told the jury to award damages on TS6 within the range suggested by its expert and "to do a little math" by incorporating that into an overall award.  9-ER-1889–90.  That's what the jury did.

- EchoSpan's post-trial motions asserted apportionment.  2-ER-238 (opposition to JMOL:  "the trial evidence supports the jury's allocation of damages"); 2-ER-41 (new trial briefing argued that "there was lay witness testimony supporting apportionment").

- The verdict form "require[d] apportionment of damages by trade secret."  *See* 9-ER-1730–31; see 2-ER-319–25 (verdict form requiring jury to break down actual and unjust-enrichment damages by trade secret).

Medallia's argument boils down to the incorrect notion that the jury cannot award *less than* the amount a plaintiff seeks, unless the plaintiff specifically

15

requests that lesser amount. Not so. *See White*, 464 S.E.2d at 226 (award "within the range of evidence … shall be affirmed").

**II. Medallia Cannot Salvage The Judgment As A Matter Of Law For The Independent Reason That EchoSpan Bore No Burden To Apportion Damages Among Its Trade Secrets.**

This Court should also reinstate the jury verdict for another reason: Trade secret plaintiffs bear no burden to apportion unjust enrichment damages—particularly, where, as here, ███████████████████████████████████ a unified system. 11-ER-1987; *see BladeRoom II*, 331 F.Supp.3d at 989; OB 45–48. In other words, the jury was free to award Medallia's *full* $23.4 million unjust enrichment to EchoSpan for TS6 alone. Its decision to award less than that amount "was well within the range of the evidence," requiring affirmance. *White*, 464 S.E.2d at 226; *see Trotman*, 715 S.E.2d at 453, 455–56; OB 49.

The district court thus erred by saddling *EchoSpan*—retroactively, following judgment—with the burden of identifying the precise dollar amount of Medallia's unjust enrichment attributable to each trade secret. On this basis, too, the Court should reverse the JMOL. *See LaMantia v. Voluntary Plan Adm'rs, Inc.*, 401 F.3d 1114, 1121 (9th Cir. 2005) ("When the district court applies the wrong burden or quantum of proof, the judgment should be reversed.").

In *Nintendo of America, Inc. v. Dragon Pacific International*, a copyright and trademark case, this Court affirmed an unapportioned damages award: "where infringing and noninfringing elements of a work cannot be readily separated, all of a defendant's profits should be awarded to a plaintiff." 40 F.3d 1007, 1012 (9th

Cir. 1994). Medallia dismisses *Nintendo* because it involved copyright and trademark, which Medallia says are different from trade secrets. AB 40. A wealth of sister-circuit authority shows that Medallia is wrong.

In *Motorola Solutions, Inc. v. Hytera Communications Corporation Ltd.*, the Seventh Circuit explicitly applied copyright law's unjust-enrichment burden-shifting—in which a copyright *defendant* has the opportunity to show that some of its profits resulted from factors other than infringement—to unjust enrichment under the Defend Trade Secrets Act. 108 F.4th 458, 477, 489 (7th Cir. 2024) ("Here, we apply the case law regarding proof of causation for apportionment of awards under the Copyright Act to the DTSA."). Courts have long adopted this sort of approach. *See, e.g.*, *Carter Prods., Inc. v. Colgate-Palmolive Co.*, 214 F.Supp. 383, 398 (D. Md. 1963) (where misappropriated trade secret is incorporated into a "unitary product," burden shifts to defendant to show apportionment).

In *Data General Corp. v. Grumman Systems Support Corp.*, the First Circuit noted, drawing on copyright law, that "the Massachusetts Supreme Judicial Court has set forth the following rule for apportionment in trade secret cases: [']Once a plaintiff demonstrates that a defendant made a profit from the sale of products produced by improper use of a trade secret, the burden shifts to the defendant to demonstrate those costs properly to be offset against its profit and the portion of its profit attributable to factors other than the trade secret.[']" 36 F.3d 1147, 1174, n. 48 (1st Cir. 1994) (quoting *USM Corp. v. Marson Fastener Corp.*, 467 N.E.2d

17

1271, 1276 (Mass. 1984), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)). "If a defendant cannot meet its burden as to costs and profits, the defendant must suffer the consequences." *USM Corp.*, 392 Mass. at 338.

The Tenth Circuit expressly adopted *USM Corp.*'s approach, relying also on a trademark apportionment decision by the Sixth Circuit and the Restatement. *See Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 249 F.App'x 63, 78–79 (10th Cir. 2007) (citing, *inter alia*, *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 607 (6th Cir. 1991); Restatement (Third) of Unfair Competition § 45 cmt. (f) (1995)).

To hold otherwise and saddle plaintiffs with the burden to prove the proportion of defendants' profits not attributable to defendants' theft would substantially depart from the law of other circuits on this issue. *See Wynn Oil Co.*, 943 F.2d at 606 ("common sense" that "the burden of apportioning the profits should be placed on the defendants," who are in the best position to determine the portion of their profits attributable to their misconduct); *accord Cartel Asset Mgmt.*, 249 F.App'x at 78–79 ("Ocwen Advisors is in the best position to rationally apportion its net profits").

Medallia's attempt to distinguish the Restatement, which the Tenth Circuit found persuasive, is unavailing. AB 41–42. First, Medallia's argument that section 45 comment (f) does not apply because it governs disgorgement of profits, AB 41, fails because the jury *did* disgorge Medallia's profits. *See* § I.A, *supra*. Second, Medallia argues that comment (f) governs the "burden of reduction" in

18

single-trade-secret cases only.  AB 41–42.  Comment (f) says no such thing.

Nor, as far as we are aware, has any trade-secret or unjust-enrichment decision

ever used the phrase "burden of reduction."

**III.  Medallia Cannot Salvage The Judgment As A Matter Of Law By Arguing That The District Court Should Have Reversed The Jury's Liability Findings.**

As an alternative means to affirm the JMOL order, Medallia rehashes

an argument that the trial court rejected, asking this Court to reverse the jury's

finding that TS6 is a trade secret.  AB 49–60.  Because substantial evidence

supports the jury's secrecy-related findings, Medallia's arguments fail.  *See OTR*

*Wheel Eng'g*, 897 F.3d at 1015.

**A.  Substantial evidence supports the jury's finding that EchoSpan adequately identified TS6.**

To adequately identify TS6, EchoSpan needed to describe it with sufficient

particularity to separate it from matters of general knowledge in the industry.  *Imax*

*Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998).  As

the district court found, 1-ER-19, EchoSpan did so.  *See, e.g.*, 2-ER-226; 7-ER-

1186–91; 9-ER-1634–35, 1796–99; 11-ER-1974–76.

The thrust of Medallia's argument is that EchoSpan supposedly "pivoted" in

its description of TS6.  AB 51–52.  Medallia already made this argument, and both

jury and court rejected it.  1-ER-18; 9-ER-1901.

Medallia argues that EchoSpan's witnesses started by describing TS6 as

a user interface, AB 51 (quoting 8-ER-1373), but then "pivoted" to describing it as

the administrative tool, AB 51 (quoting 7-ER-1186).  But all that testimony is from

19

EchoSpan's case-in-chief; there was no "pivot[]." Indeed, testimony about the administrative tool's "interaction" and "mechanisms," 7-ER-1186, came *before* the testimony about the administrative tool's design elements, 8-ER-1373.

From the start, EchoSpan defined TS6 as "[t]he design and organization of the user interface of the EchoSpan tool for managing complex projects. The user interface allows for the support of multiple survey projects simultaneously and efficiently allows for management of those projects." 2-ER-226. Through years of experience, EchoSpan designed the hub of its software to permit efficient management of demanding, large-volume datasets. 6-ER-953 (EchoSpan's software specialized in collecting, correlating, and presenting data from many sources); 9-ER-1796–99, 1801 (TS6 was the "hub" that made all the rest of the software features work). Witnesses consistently described this as the software's "administrative tool." 1-ER-18. When EchoSpan's CEO was asked to "describe" TS6 early at trial, he defined it as "the administrative tool and its interaction with the end user's tool." 7-ER-1186. Subsequent witness testimony echoed that description. 9-ER-1634–35.

EchoSpan showed the tool's design and function to the jury and demonstrated how it enabled " ███████████████████████████ ████████████████████████████ " in a single product.[3] 11-ER-1974–

---

[3] In a footnote, Medallia faults the district court for "credit[ing] Vance's 'demo' of TS6 for the jury" because the demonstrative wasn't admitted in evidence. AB 53 n. 7. Demonstrative aids typically are not evidence, but rather aid the jury in

76, 1987. The jury heard that the administrative tool was the key that enabled EchoSpan's system and gave it value. 7-ER-1190–91; 10-ER-1634–35, 1799–1800; 11-ER-1975, 1986–87 (demonstrating system). EchoSpan also showed that Medallia stole TS6, specifically. 1-ER-18–19 ("EchoSpan repeatedly presented Exhibit 19 as evidence of settings Medallia copied from TS 6.").

Substantial evidence supports the jury's finding that EchoSpan adequately identified TS6. 1-ER-19 (ruling rejecting Medallia's argument); 2-ER-323 (verdict); 3-ER-339 (particularity instruction).

### B. Substantial evidence supports the jury's finding that TS6 is a secret and that EchoSpan takes reasonable measures to maintain that secrecy.

The jury found TS6 is indeed secret. 2-ER-323. Medallia argues otherwise, because EchoSpan had publicly available marketing materials and videos showing parts of its software. AB 54–55, 59. As the district court and jury recognized, those videos showed parts of an obsolete, decade-plus-old version of the software. 1-ER-19; *see* 11-ER-1978.

To overcome the jury's finding of secrecy, Medallia must show that no reasonable juror could find TS6 was secret enough to warrant protection. *See* p. 1, *supra*. To do that, Medallia needs to identify aspects of TS6—the current version, not an out-of-use edition—that were indisputably publicly ascertainable. *See Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 541 (7th Cir. 2021) ("a company does

---

understanding evidence, *United States v. Wood*, 943 F.2d 1048, 1053–54 (9th Cir. 1991)—here, Vance's testimony, which Medallia did not object to.

not forfeit trade secret protection by publicly displaying or selling a product unless the trade secret is 'readily ascertainable'"); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (court "must disregard all evidence favorable to the moving party that the jury is not required to believe").

Even if parts of the current software were represented in the prior version, that would not necessarily defeat trade secret protection. *See Metallurgical Indus., Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1200 (5th Cir. 1986) ("a holder may divulge his information to a limited extent without destroying its status as a trade secret"); *Allstate Ins. Co. v. Fougere*, 79 F.4th 172, 189 (1st Cir. 2023) (rejecting challenge to trade secret judgment; publicly available nature of elements of the secret "informs" analysis but "is not dispositive"). Regardless, Medallia has not even tried to make that showing.

The Seventh Circuit rejected a similar argument in *Life Spine*, 8 F.4th at 541. Like Medallia, the defendant argued that a trade secret was not secret because it had been publicly displayed and sold. *Id.* Affirming the finding of secrecy, the court explained that "the inquiry is more nuanced than that. We focus on the *precise information* that the plaintiff seeks to protect and ask if it qualifies as a trade secret under the relevant statutory definition." *Id.* (italics added).

Here, the jury saw demonstrations of what had previously been disclosed (EchoSpan's prior product, 6-ER-1016–23) and what EchoSpan asserted as TS6 (the current product, 11-ER-1971–88). It determined as a matter of fact that TS6 was not readily ascertainable from the display of the earlier product. *See* 1-ER-19.

Medallia has not shown that no reasonable juror could reach that conclusion, so the denial of JMOL on this basis must be affirmed. *El-Hakem*, 415 F.3d at 1072.

Nor is there any basis to disturb the jury finding that EchoSpan took reasonable efforts to keep TS6 secret. Medallia argues that confidentiality agreements alone are not a reasonable effort to maintain secrecy. AB 55–56. But EchoSpan never relied solely on confidentiality agreements. EchoSpan took a multifaceted approach to confidentiality:

- To see the software, prospective clients had to fill out an application using a company email address. 6-ER-963.

- EchoSpan vetted applicants by searching the company on the internet to make sure the company was actually a potential client and not a competitor. 6-ER-1005–06. At the time Medallia applied for access, it was not yet a competitor. 6-ER-984.

- If approved, EchoSpan required clients to indicate whether they were evaluating the tool to buy for internal use (Medallia said it was) and agree to keep the information they received—including EchoSpan's "product designs"—confidential. 6-ER-969–70; SER-280. Only then would the applicant get access. 7-ER-1191.

- On the back end, EchoSpan further enforced secrecy through employee confidentiality policies and hardware and software cybersecurity tools, which EchoSpan tested by hiring a cybersecurity firm to perform a quarterly white-hat hack. 7-ER-1198–1204.

23

These efforts are a far cry from Medallia's cases like *Diamond Power International, Inc. v. Davidson*, 540 F.Supp.2d 1322, 1335 (N.D. Ga. 2007), where the plaintiff merely required its employees to sign a confidentiality agreement at the start of employment, without anything more. Here, EchoSpan's efforts were enough that Medallia itself *knew* the information was secret and had to lie to gain access to it. 1-ER-13; 6-ER-970–74.

Medallia reargues the facts, claiming EchoSpan's efforts were inadequate because EchoSpan did not: (1) require signed confidentiality agreements from prospective clients' employees or those who saw publicly available demonstrations; or (2) mark *every page* on the free trial "confidential." These arguments fail. EchoSpan did not require separate agreements from every subordinate employee-user or mark every page confidential because it offered the software only to companies that agreed to grant employees access solely on a "need to know" basis and to "ensure that each of its personnel … shall be bound to uphold" confidentiality. SER-280; *see* 7-ER-1191. The public videos did not require confidentiality because they related to obsolete versions. *See* 1-ER-19.

Substantial evidence supports the verdict. "Secrecy need not be absolute. The owner of the secret need only take reasonable precautions to ensure that it would be difficult for others to discover the secret without using improper means." *Henry Hope X-Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1340 (9th Cir. 1982)

―――――

24

This Court should reverse the JMOL and reinstate the jury verdict, both (1) because the jury had a reasonable basis upon which to apportion damages, *see* § I, *supra*, and (2) because, in any event, the jury was not required to apportion damages at all, *see* § II, *supra*. The Court thus need go no further.

Should the Court conclude otherwise, however, we now explain why a new trial is the only way to avoid a miscarriage of justice.

## IV. The District Court Erred By Not Granting A New Trial After Unfair Surprise Eliminated The Entire Jury Verdict.

Medallia agrees that "a new trial could be granted on, *inter alia*, 'any ground necessary to prevent a miscarriage of justice.'" AB 42. It argues, however, that EchoSpan could not be surprised by the district court's decision to apply the "settled law that juries must have a reasonable basis for their awards." AB 43.

Medallia again mischaracterizes the issue: The unfair surprise here was the district court's sudden post-trial decision that *damages cannot have a reasonable basis without expert pre-apportionment*. *See* OB 51–53. The court itself described this as a "'novel issue of law.'" 1-ER-22 ("The Ninth Circuit has not ruled" on this issue) (quoting *Hart v. Massanari*, 266 F.3d 1155, 1169 (9th Cir. 2001)); 2-ER-130–31.

The district court's game-changing reinterpretation of the reasonable-basis standard also came much later in trial than Medallia suggests:

- **Before trial:** The court refused to exclude EchoSpan's damages expert, ruling that the unapportioned calculation was relevant and admissible and that it was up to the jury to "weigh the competing admissible evidence at trial." 3-ER-385–87.

- **Mid-trial:** Despite granting judgment for Medallia as to TS5, the court denied Medallia's motion to strike the expert's damages opinion. 9-ER-1707. The court concluded that (1) the issue could be addressed through the verdict form and jury instructions and (2) the expert provided testimony from which the jury could calculate damages by working down from the overall amount. 8-ER-1566–70, 1575; 9-ER-1707. The parties created a verdict form and instructions requiring the jury to apportion damages, working down from a larger total in the manner the court approved. 2-ER-326; 3-ER-345.

- **After trial:** The court reversed course on this "novel issue of law"— now saying that EchoSpan's theory had been nonviable all along. 1-ER-22–29.

Medallia's suggestion that the court's final position was clear all along is false. It also runs directly contrary to Medallia's position at a hearing on its own new trial motion: "[T]here's a lot to be said for a new trial for the reasons precisely that [the court] articulated. I mean, this trial—sort of the key aspect of this trial really occurred at the eleventh hour or the eleventh and a half hour." 2-ER-131. Medallia now seeks to disavow this statement. AB 46, n. 3. It cannot:

Medallia was responding to the court's suggestion that "maybe it would be more fair to just start over" so that the parties could "apportion from the beginning," rather than "adjust[] to the mid-trial changes in evidence and rulings." 2-ER-130–31. Medallia even went on to say that a new trial was warranted so that "there could be clarity about the apportionment from the beginning." 2-ER-132. Medallia cannot avoid now what it conceded then: This trial turned on a surprising, eleventh-hour development, justifying a new trial on damages.

Before and during trial, the court repeatedly reaffirmed that pre-apportionment was not required and the jury could calculate the amount of damages based on EchoSpan's expert's overall estimate. By the time the court declared that expert pre-apportionment *was* required, trial was over.

EchoSpan demonstrated that in analogous patent cases, courts often order a new trial on damages where a court overturns a jury award for failure to provide evidence apportioning damages. OB 57–58. Medallia tries to distinguish this practice, arguing that patent law is different because it provides for award of a "reasonable royalty" as a baseline remedy and trade secret law supposedly does not. AB 47–48. Medallia is wrong: Georgia trade secret law provides that where neither actual damages nor unjust enrichment can be proven, courts award a reasonable royalty. Ga. Code Ann. § 10-1-763(a); *see also* 18 U.S.C. § 1836(b)(3)(B)(ii). Indeed, Medallia's own cases undermine its argument: Both *METI* and *Texas Advanced* saw a retrial on damages after the appellate court vacated an unapportioned damages award. *See Mgmt. & Eng'g Techs., Intl, Inc. v.*

27

*Info. Sys. Support, Inc.*, 639 F.App'x 506 (9th Cir. 2016); *Texas Advanced*, 895 F.3d at 1318.

In a footnote, Medallia argues that any retrial should be a bench trial relating solely to unjust enrichment (as opposed to damages generally) and, paradoxically, that the retrial should reach liability too. AB 49, n. 5. Medallia relies on inapposite authorities relating to equitable claims like contract rescission. *Id.* (citing, *inter alia*, *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989)). It also gives no reason why EchoSpan should be limited to showing unjust enrichment when the statute contemplates multiple alternative damages measures. *See* Ga. Code Ann. § 10-1-763.

If the Court does not reverse the JMOL, it should award a new trial on damages for Medallia's willful and malicious misappropriation of TS6.

28

**CONCLUSION**

Because a reasonable juror could have found that TS6 was a trade secret and awarded $11.7 million in damages for Medallia's misappropriation, this Court should reinstate the verdict in full. Even if not, it should grant a new trial on damages in the interest of fairness.

Dated: July 28, 2025        **GREINES, MARTIN, STEIN & RICHLAND LLP**
Jeffrey Gurrola
Alex Chemerinsky

**COUNCILL, GUNNEMANN & CHALLY LLC**
Jonathan R. Chally
Jennifer R. Virostko

**LEWIS & LLEWELLYN LLP**
Evangeline A.Z. Burbidge
Zachary C. Flood

By:   *s/ Jeffrey Gurrola*
_____
Jeffrey Gurrola

Attorneys for Plaintiff/Appellant
ECHOSPAN, INC.

29

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

1.     This brief complies with the type-volume limitation of Cir. R. 32-1(a) because this brief contains 6,950 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman font.

Date: July 28, 2025

**GREINES, MARTIN, STEIN & RICHLAND LLP**
Jeffrey Gurrola
Alex Chemerinsky

**COUNCILL, GUNNEMANN & CHALLY LLC**
Jonathan R. Chally
Jennifer R. Virostko

**LEWIS & LLEWELLYN LLP**
Evangeline A.Z. Burbidge
Zachary C. Flood

By:   *s/ Jeffrey Gurrola*

Jeffrey Gurrola

Attorneys for Plaintiff/Appellant
ECHOSPAN, INC.

30

**CERTIFICATE OF SERVICE**
[24-4751]

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 6420 Wilshire Boulevard, Suite 1100, Los Angeles, California 90048, and my email address is mallen@gmsr.com.

I certify that on July 28, 2025, I electronically filed the foregoing **APPELLANT'S REPLY BRIEF [REDACTED]**with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system.

I certify that each party in the case is represented by counsel who are registered ACMS users and will be served by the appellate ACMS system.

*s/ Maureen Allen*

Maureen Allen

31